2-1094, In Re Charger Ventures, Mr. Day, whenever you're ready. It pleases the Court, William Day on behalf of the Appellant Charger Ventures LLC. I'm here because the trademark refused registration based on a likelihood of confusion for a registered mark SPARK and ours SPARK Living. I believe, it is our argument, that the Board did not properly weigh the DuPont factors, and it didn't explain how they weighed them in their refusal. As the Court's aware from the evidence, there's considerable evidence of third-party use of the mark. Counsel, I'm interested in your arguments about the manner in which the DuPont factors were addressed. Is it the case that the Board has to make a full analysis, do more than what they did in this particular case? Is it the case that the Board is required by law to actually assign weight to one party over the other? I think that they should assign weight. I don't know if it's black-letter law, but there's many cases where they do assign weight. It weighs heavily against likelihood of confusion, or it weighs heavily for confusion. In this case, we had significant third-party uses of SPARK and SPARK formative marks in the real estate market, which is what this was for. This Court, in 2015, had two cases that they reversed. One, Jack Wolfskin had 14 uses of the mark in commerce, and he had 26 uses. In this case, we've got 21 SPARK formative marks being used in commerce that were in evidence on the record here. The way the Board articulated it, they said there is some likelihood of weakness. It shows some weakness. They didn't articulate that this doesn't weigh heavily, or it does weigh heavily. They just said there's some sign of weakness, but we have to look at it in terms of the other factors as well. But that's what happens in these cases. There are a bunch of factors, and the Board has to look at...well, it's not required, I guess, to look at every factor, but the ones that it does look at, then it has to weigh them. So that doesn't seem to me to be an unusual aspect of this case in terms of what they did in establishing error. But with this Court's de novo review of the weighing of the evidence, I don't think they did weigh the other considerable third-party uses at all, especially when this Court has reversed for 14 uses and 26 uses, and this one had 21 SPARK formative uses. More if you add the international uses. This was all in evidence. These were all used in commerce, as the chart in Appendix 14 shows, and the Trademark Trial and Appeal Board actually printed it in their decision. But that shows the uses, and I don't think they gave that sufficient weight in terms of the likelihood of confusion analysis. It's our argument... Have you found any cases where we've required the Board to articulate, with some degree of clarity, how much weight they're giving to each of the factors? Nothing that requires it. But in terms of the way they wrote it, at least my reading of it, it doesn't show the weight they gave it if it was considerable at all. I think, it's our argument, that the weakness of the mark, because of the other 21 uses of SPARK formative mark, should have been dispositive of that one DuPont factor. I don't understand. You said they didn't say it. Isn't there a quote from JA15 where they say, I think the Board specifically found that the third-party uses meant that, quote, the term SPARK is used in association with real estate services has some commercial weakness. Some commercial weakness. But I don't think they gave the weight that it deserves based on the other rulings from this Court. They didn't give it the weight that it deserves from those uses. You're saying that the Board didn't take the next step and say that there's commercial weakness and this weighs in favor of the  But I don't, that's one of the arguments. The other argument is they didn't have... But you have no legal authority for that. No. I don't. But the other point is they didn't give it, even with their argument, they didn't give it the weight that it should deserve with respect to other cases in coming out of this Court. Jack Wolfskin and the Juice Generation cases. So looking at that commercial weakness, when you look at the other factors, I believe they dissected the mark improperly. Yes, they said SPARK as the first word is the dominant word, but this also we add living to it. So that changes the sight, sound, and connotation of the mark. Taking that into consideration is one of the factors. And the other factor is one focuses, SPARK focuses on commercial real estate services and that's specifically self-limited in their description on their trademark application. Whereas SPARK Living focuses on residential real estate services. To me that was a central focus on why the Board ended up where it did. Because of the potential of the actual overlap with respect to commercial and residential real estate. Weren't there lots of marks that they had that dealt with where people used both, were the same producer, the same person, was both in the commercial and the residential real estate market, right? Yes, they showed a lot of those. Establishing that there's a great deal of overlap in the real estate, I'm sorry, in the residential and the commercial real estate market. And that seemed to me to have really propelled their conclusions in this case. What's the purpose of having a self-limiting description? It's the rule in the trademark it's a rule that you can further I can't think of the word but you can reduce your description of the mark but you can't expand on the descriptions. We're looking at it from the point of view of the likelihood of confusion. So whether you limit it to residential, whether in the minds of consumers they're going to still confuse the connection between that and commercial real estate. So the distinction that you are drawing is not going to carry over into the marketplace. Right, and then that goes back into the third-party uses in the marketplace, how it's not as distinctive because it's being used in residential services by 21 other companies that people are likely to see and they're likely to look at them and know the differences because it's being used by other companies. And then that goes to the next one which is consumer sophistication. We believe that a real estate transaction, they're going to be more sophisticated than just grabbing something off a shelf at a grocery store. And looking at that they're going to realize and they're going to do their due diligence and look into the companies and that weighs against likelihood of confusion as well. Didn't the board give you some credit for that though in their way? Yes, they did, I believe. But looking at, I guess my main argument for this is they didn't give the weight that I think based on other cases of the 21 other SPARC formative marks. The argument ultimately is we review the weighing de novo and you think we should just weigh things differently than the board did. Yes, based on other cases that have come out of this court. I believe that. And is it further your argument that this court cannot undertake a de novo review if in fact the board did not complete its analysis and tell us which factor weighs in favor of whom? Well, I mean I think this court has the de novo review so whether they articulated it sufficiently I don't know if that's it would be helpful I think but in terms of this court being able to undertake a de novo. That statement hurts your argument. I was very interested in the sufficiency of the board's opinion but your statement now just gives clarity to it that it doesn't matter how detailed it is this is a de novo review. Yes. What's the case for de novo review on the weighing? That would be Quick Trip West Inc. versus Weigel Stores Inc. 984 F3rd 1031 Federal Circuit 2021 citing Swagway LLC versus International Trade Commission 934 F3rd 1332 that's a 2019 case and that would be I've cited that in our response brief on page 1 under argument is where I quote that. You're in to your rebuttal. I have nothing to reserve on this. Thank you. Good morning, your honors. May it please the court. Counsel said that the board did not give weakness the weight it deserved. He thinks it should have been something more than some commercial weakness. Number one, that's something that can't be done here. They're looking at that individual factor and saying that should have been more commercial weakness than the board found when it said some and on substantial evidence that's really not something that can be done. Counsel talked about the weighing of the DuPont factors in the case. The board explained exactly how it weighed them. It said which ones it found weighing for confusion, which ones it found weighing against confusion and ultimately weighed them finding that there is a likelihood of confusion. Is that weighing subject to legal review? Yes. That last part of the DuPont analysis where you take findings on the individual factors and weigh them together is performed in this court de novo. We don't think there's any real reason here that that calculus ought to change primarily because if you're going to be giving weight to commercial weakness in a particular case, that's usually in an ex parte case that's a difficult position for the patent office. There were cases that were cited, Jack Wolfskin and Juice Generation, both inter partes cases where the person whose mark is attacked as being weak can come back and give evidence of marketplace strength through their business practices and their sales success and their advertising and things of that nature. We at the patent office can't do that. We think there ought to be some caution when doing that. I wanted to also point out that the counsel mentioned that Jack Wolfskin, there were 14 I think registrations in the case. That's actually not accurate. In that particular case, if you go back to the board's decision which this court vacated, there were 94 registrations in the case and 28 examples of uses. That's far less than we have here and that's what prompted that court to say it was ubiquitous or overwhelming evidence of third party use in that case. We don't think that those particular cases govern here, particularly when you have marks that are so close. The applicant's mark shares the same first word as the only word in the registered mark and adds a disclaimed descriptive term to it so it's very close and there was really overwhelming evidence that the services are related. That lots of companies offer both commercial and residential real estate services on their same website which goes to the trade channels. That's not instinctively obvious to me. There might be companies that offer the same services but if you're looking at it from the perspective of the consumer I'm not a consumer that says, okay, I want to do, it can be either commercial or residential real estate. It doesn't matter to me or there's an overlap between. From the consumer's perspective, those are two very, very different avenues and somebody who's interested in something in commercial real estate is not very likely, if likely at all to be interested in residential and vice versa. We think that the board addressed that when it said that the people who are looking for commercial real estate are also people that have, there's a lot of overlap with people who look to those companies for residential real estate because they have to live somewhere. The people who look for commercial real estate actually have residential real estate and some of them would get it from the same companies. In that regard, there's a finding, I don't know if this is the one you're referring to but on appendix 11 of the board's opinion that kind of sticks out at me. When you're talking about the conditions of sale consumers of applicant services are those that are seeking to list their residential property for sale or to lease their residential property to others or seek a property manager for their residential property. That's all residential. Then it goes on to say it is possible that consumers in need of at least, of that at least encounter applicants real estate and real estate services may also be consumers. It is possible I mean, as we all know, anything's possible. Anything's possible, I can't refute that but is that the standard we're supposed to be applying here? No, it's not possible but if you look at the evidence that they were characterizing it shows a number of different web pages for like Century 21 or Remax or a number of other companies where on the same web page you have their residential drop down menu and their commercial drop down menu. There is evidence that when someone looks at a web page like that they will encounter both of them. The evidence actually shows that they would see them on the same web page. I think that while the board probably qualified that, it didn't need to based on the evidence. I'd like to point out one last thing. The marks here, there's really not much of an effort to say that the word spark is a weak term. There's only one registration in the record for something related to real estate services. It has a different second word, labs, and it's in color with the design. This is a really crowded field, isn't it? It's not particularly particularly when compared to Jack Wolfskin or Juice Generation. The evidence here shows that there's a significant number of businesses operating using the word spark in their name. There are a few. I'll give that but some of the ones that were in that chart were foreign. Did the board examine that? Yes, the board did. The board found that there were enough to convince it to find that there was some commercial weakness in the case. Notwithstanding that, the other factors such as the similarity of the marks and the similarity of the services outweighed that because usually as this court says, those are the two predominant factors. I thought that in this area the board found that it's pretty much even here. Is that correct? The ultimate weighing? No, the board did not find that. There was overlap. There was overlap as to which factor you're on? There was overlap in the commercial and residential source of the service. That's correct, Your Honor. That's what the board found. Does it resolve the overlap? When Judge Prost was asking the questions, you centered on the word also. That to me signifies it can go either way. No, I think what the board was saying was that some customers will also encounter, if they're looking for residential real estate, will also encounter commercial real estate offerings. That's what that evidence was pointing to. Do we apply a substantial evidence standard in any of this? We heard you say and also your friend that we're looking at a de novo review standard. Is there an underlying factual finding that we're not allowed to touch? You can't touch them, but it's the underlying DuPont factors themselves, the similarity of the marks, the services, the trade channels, things of that nature. We reached the legal conclusion reached under the DuPont factors. We don't reach the underlying factual findings. You do review them for substantial evidence. Yes, but if we don't have a decision or anything that indicates from the board how it decided the case and how can we say, how can we review for substantial evidence a decision if we don't have a decision? The board did explain at the very end of the decision, after it went through all of the individual factors, it then in the part of the decision marked conclusion, it actually went through how it weighed the factors. It said, while we have found that the purchasers may exercise care given the nature of real estate services, there is insufficient evidence in the record regarding the degree of purchaser care of sophistication to overcome the close similarity of the marks and the relatedness of the services. As we pointed out, those are the two predominant inquiries in almost any trademark case. Given those similarities the board went on, as well as the overlapping channels of trade, we find that conclusion is likely. We make this conclusion despite our finding that there is some commercial weakness of the term spark in connection with real estate services. The board actually went fairly far into telling everyone what its thinking was on this particular case in weighing the DuPont factors. That in conjunction with the fact that substantial evidence supports its finding on all of those factors, we think that the court ought to affirm this particular judgment. I just want to make sure I follow on the standard of review. The only thing in that paragraph on A19 that we reviewed de novo is the ultimate weighing as to the legal conclusion as to whether confusion is likely. Is that right? That's correct. And each of those subsidiary factors you say we reviewed just for substantial evidence? That is correct, your honor. Does the board ever use the word weigh in this decision? I did not do a search for the word weighing, but I think it's clear from the passage I read that it was sort of looking at the findings it had made and weighing them together. If there are no further questions I'll yield back the rest of my time. Thank you. Thank you, your honor. I would just conclude that the board has stated its policy to resolve any doubt as to the registrability of a mark by publishing it for opposition. I would argue that there is enough doubt in this case with all the facts and the evidence and the record that it should be published for opposition. And to remedy this. So unless there's any other questions, I have nothing further for the court. Thank you. Thank you.